**STATE of Minnesota, Respondent,**

v.

**John PETTEE, Appellant.**

No. C6–93–939.

Court of Appeals of Minnesota.

Jan. 18, 1994.

Review Granted March 31, 1994.

John M. Stuart, State Public Defender, Mark D. Nyvold, Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Michael O. Freeman, Hennepin County Atty., Donna J. Wolfson, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by HARTEN, P.J., and KLAPHAKE and PETERSON, JJ.

## OPINION

HARTEN, Judge.

Appellant John Pettee claims that the state impermissibly sought a first degree murder indictment against him after dismissal of a prior indictment charging third degree murder and second degree manslaughter. We affirm.

## FACTS

In November 1991, a Hennepin County grand jury considered charges related to the death of Ruth Munden, who died in June 1991. Munden was found naked in bed in her apartment. The medical examiner testified that the probable cause of death was suffocation. Pettee, who lived in the same building as Munden, admitted having had consensual sex with Munden in her apartment on the date of her death.

The state sought a first degree murder indictment. The prosecutor instructed the grand jury on the statutory elements of causing "the death of a [person] while committing * * * criminal sexual conduct in the first or second degree with * * * violence." Minn. Stat. 609.185(2) (1990). The grand jury was also instructed on lesser offenses. It returned an indictment against Pettee for third degree murder and second degree manslaughter pursuant to Minn.Stat. §§ 609.-

195(a) (1990) (causing death of another by dangerous act with depraved mind) and 609.-205(1) (1990) (causing death of another by culpable negligence).

In April 1992, the Hennepin County District Court granted Pettee's motion to dismiss the indictment because improper evidence had been presented to the grand jury. During three days in May and June 1992, a successor grand jury was presented with evidence, instructed on the elements of first degree murder, given an instruction booklet on lesser charges, and told by the prosecutor that its duty was to determine the charges. The grand jury returned an indictment for first degree murder pursuant to section 609.-185(2). The district court denied Pettee's motion to dismiss the new indictment. Pettee waived a jury trial and stipulated to facts supporting second degree felony murder under Minn.Stat. § 609.19(2) (1990). The district court reviewed the record, found Pettee guilty of second degree felony murder, and sentenced him to 144 months in prison.

## ISSUE

Is the state barred from again seeking an indictment for first degree murder after dismissal for curable defects of a previous grand jury indictment on lesser charges?

## ANALYSIS

"A presumption of regularity attaches to a grand jury indictment, and * * * an indictment [rarely] will be invalidated." *Marhoun v. State*, 451 N.W.2d 323, 327 (Minn.1990). "A criminal defendant bears a heavy burden when seeking to overturn a grand jury indictment." *State v. Johnson*, 463 N.W.2d 527, 531 (Minn.1990). Minn.R.Crim.P. 17.06, subd. 4(3) provides:

> If the [indictment] dismissal is for * * * a defect that could be cured or avoided by an amended or new indictment, or complaint, further prosecution for the same offense shall not be barred.

Pettee argues that the first degree murder charge in the second indictment is a different offense within the meaning of the rule, and therefore that prosecution for that offense is plainly prohibited. Construction of

a rule of criminal procedure is subject to de novo review on appeal. *See State v. Moore*, 431 N.W.2d 565, 567 (Minn.App.1988) (criminal statute reviewed de novo).

"[J]eopardy attaches when the [petit] jury is impaneled or, in a bench trial, when the first witness is sworn or when evidence is taken." *State v. Abraham*, 335 N.W.2d 745, 748 (Minn.1983) (citing *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978)). Jeopardy does not attach to the stage of the proceedings at issue here. Our reading of rule 17.06 in its entirety convinces us that the primary import of the rule's "same offense" language is that jeopardy does not attach to grand jury proceedings.

Under Pettee's interpretation, rule 17.06 would provide that "further prosecution for the same offense [returned by the grand jury] shall not be barred." We disagree, and interpret the phrase "same offense" in clause (3) of subdivision 4 to mean "same behavioral incident." *See* Minn.Stat.Ann. § 609.035 advisory committee cmt. (West 1987) (indictment may charge "several offenses arising out of the same conduct").

Beyond his claim that rule 17.06 creates additional double jeopardy protection, Pettee's argument apparently is grounded in concerns about due process and prosecutorial vindictiveness. In this vein, Minn.R.Crim.P. 17.05 provides that the district court

> may permit an indictment or complaint to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.

Rule 17.05 has been construed to permit the state to amend an indictment prior to trial to charge a different statutory subdivision, where the grand jury was originally instructed on the specific intent language of that subdivision, and the grand jury actually included that language in its indictment. *State v. Wickstrom*, 405 N.W.2d 1, 5 (Minn. App.1987), *pet. for rev. denied* (Minn. June 30, 1987). The state's amendment in *Wickstrom* did not circumvent the grand jury. *Id.* at 4. A complaint may be freely amended prior to trial to charge different or additional offenses, as long as there is no prosecutorial vindictiveness. *See State v. Alexander*, 290 N.W.2d 745, 748–49 (Minn.1980).

Here, because the crimes presented to the second grand jury were no different or greater than those originally presented, there is no evidence of prejudice, vindictiveness, or circumvention. We also disagree with Pettee's claim that certain nuances in the state's presentation of the offenses to the second grand jury suggest vindictiveness.

Pettee argues that if the district court's decision stands, the effect will be to discourage defendants from challenging indictments for fear of being re-indicted on more serious charges. Generally, however, we believe that a successful challenge will benefit the defendant by eliminating improper evidence. Moreover, it could increase the likelihood that the case would not be presented to a grand jury again, would be presented only on lesser offenses, or would result in an indictment not being returned. In short, we are not persuaded that charges in an indictment that is later dismissed for curable defects should, per se, delimit the crimes that can be presented to a second grand jury. The procedural rules afford fundamental fairness in a criminal proceeding; they do not guarantee a risk-free environment.

### DECISION

The district court did not err in refusing to dismiss the indictment for first degree murder.

**Affirmed.**